United States District Court
Southern District of Texas
**ENTERED**
August 29, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DELISE ADAMS, *et al.*, § <br> § <br> Plaintiffs, § <br> v. § <br> § <br> MEMORIAL HERMANN, *et al.*, § <br> § <br> Defendants. § <br> § <br> § | CIVIL ACTION NO. 4:15-CV-1270 |

## **ORDER**

The Court has before it Plaintiffs' Motion for New Trial [Doc. No. 181] and Defendants' Response in Opposition [Doc. No. 183]. For the reasons set forth below, the motion is DENIED. Plaintiffs offer several grounds for their Motion for New Trial, and the Court will address them in turn.

**I.    Voir Dire**

Plaintiffs allege that the Court did not permit them to strike certain jurors for cause who, according to Plaintiffs, said that they would require more than a preponderance of the evidence to find for Plaintiffs. Plaintiffs also allege that they were not permitted to ask those jurors follow-up questions. Defendants respond that the prospective jurors never swore that they would not follow the law. Defendants further assert that both the Court and Defendants asked follow-up questions sufficient to ensure that these prospective jurors could and would follow the Court's instructions. After considering the parties' arguments, the Court rejects Plaintiffs' alleged point of error.

A brief narration of part of the voir dire in this case is required. During voir dire, Plaintiffs' counsel began asking whether any prospective jurors would need 60% proof in order to find for

1

an employment-discrimination plaintiff. The Court interrupted counsel's questioning and instructed her not to try to commit the jury, especially to a concept that would be contrary to established law. Plaintiffs' counsel replied that she was not committing the jury. Despite the Court's ruling, Plaintiffs' counsel nonetheless continued with her question and continued recording which jurors raised their hands. Defense counsel objected that Plaintiffs' counsel was ignoring the Court's instruction, and the Court instructed Plaintiffs' counsel to move to a different topic of questioning. Plaintiffs' counsel then stated, "I understand, Your Honor. I am recording their answer for my peremptory strikes," and continued to ignore the Court's order by telling the prospective jurors, "Please raise your hand." When the proceedings shifted to Defense counsel's voir dire, Defense counsel asked if anyone would be unable to follow the Court's instructions to use a preponderance of the evidence burden of proof. One juror, Juror 2, raised her hand.[1]

Later, after the potential jurors were excused into the hallway, Plaintiffs' counsel, going back on her word, moved to strike for cause *en masse* 13 recorded jurors who had initially raised their hands. The Court responded by asking Plaintiffs' counsel about her misrepresentation: she had told the Court that she was "recording their answer for my peremptory strikes" (after the Court repeatedly instructed her to move to a different line of questioning), yet she then moved to strike that group for cause. The Court stated, "I would have followed up with the jurors on that, had you told me the truth," and reiterated, "I would have gone back with those jurors and talked to them, but for your representation." The Court denied the group-based strikes for cause in question because Plaintiffs' counsel had clearly misled the Court.

---

[1] Juror 2 had previously indicated that it would be "very difficult" to wait to hear Defendants' case before making up her mind because of her close friends' experiences with age discrimination. The Court excluded her for cause. Another juror, Juror 31, also raised his hand and asked for a clarification. After Defense counsel clarified her question, it is not clear whether Juror 31 continued to raise his hand. In any event, the Court later struck Juror 31 for cause.

2

Despite the misrepresentations by counsel, the Court then took steps to ensure that any prospective juror selected for the jury could fairly apply the law and burden of proof as instructed by the Court. The Court called the prospective jurors back into the courtroom and explained that it would instruct them on the law at the conclusion of the case. The Court stated that it would instruct the jury to make a decision based on a preponderance of the evidence and stated what that standard means. The Court referenced some of the percentages mentioned during questioning by Plaintiffs' counsel and explained, "in life, wouldn't we all like to make decisions based on 100 percent information? I mean, of course, we would." The Court then asked: "is there anyone, if I instruct you like I just described, more likely than not, that cannot sit and listen to the evidence, and basically let the chips fall where they may? Is there anyone here who cannot follow my instructions on what the preponderance of the evidence means?" No prospective jurors raised their hands.

Plaintiffs now contend that "when jurors in this case swore to their inability to follow the law with respect to the 'preponderance of the evidence' standard, they qualified themselves for a 'for cause' strike."[2] Defendants respond that the jurors swore to no such thing. According to Defendants, "in connection with this line of inquiry, the jurors were provided with no context or clear guidance regarding what the law requires under the 'preponderance of the evidence' burden of proof. Rather, the question posed by Plaintiffs' counsel essentially asked the jury a general and overly broad question about what their preference would be for the burden of proof."[3]

As an initial matter, the Court notes that 6 of these 13 potential jurors were excluded for cause for other reasons. Defendants unsuccessfully moved to strike a seventh (Juror 5) from the

---

[2] Plaintiffs' Motion for New Trial, Doc. No. 181 at 5. Plaintiffs make no excuse and give no explanation for why Plaintiffs' counsel purposefully misled the Court. Plaintiffs also give no explanation for why Plaintiffs' counsel should not be held to her representation that her questions were "for my peremptory strikes."
[3] Defendants' Response, Doc. No. 183 at 8.

list, and Plaintiffs actually opposed that strike for cause, in part because "you asked the jurors if they would follow your instructions and they have said that they would." *Clearly at trial Plaintiffs took the position that the Court's instruction and subsequent questioning cured the issue.* Defendants later used a peremptory strike on that juror. Out of the six other prospective jurors, Plaintiffs exercised their peremptory strikes on four. The upshot is that, due to the Court's rulings on the strikes for cause, Plaintiffs *could have* excluded the entire list of 13 prospective jurors about which they now complain had they exercised their six peremptory strikes on the remaining jurors, given that six others were excluded for cause and Plaintiffs opposed Defendants' attempt to exclude a seventh juror for cause (a juror that Defendants later struck). In the end, only 1 juror out of the 13 that Plaintiffs moved to strike based on his or her burden-of-proof answer—Juror 25—sat on the jury. At the time that juror was seated, no objection was made, nor were there any requests for additional strikes. In their motion, Plaintiffs do not identify any particular juror as unfit to be seated based on his or her individual statements.

The Court agrees with Defendants' contention that the prospective jurors did not "answer" that they would not follow the preponderance of the evidence standard and would hold Plaintiffs to a higher standard of proof. As Defendants state, "in connection with this line of inquiry, the jurors were provided with no context or clear guidance regarding what the law requires under the 'preponderance of the evidence' burden of proof."[4] In fact, when Defense counsel asked the potential jurors whether they would follow the Court's instructions to use a preponderance of the evidence burden of proof, one juror expressed his confusion: "It seems like you're asking a different question about the instructions that the Court will give than the plaintiffs' attorney, and so I am a bit unclear as to what instructions would we be given relative to burden of proof."

---

[4] Defendants' Response, Doc. No. 183 at 8.

When Defense counsel asked whether anyone would be unable to apply the Court's instructions on the burden of proof, only Juror 2 raised her hand (a juror that the Court excluded for cause).[5] When the Court subsequently clarified that the law required the jury to use a preponderance of the evidence standard, no jurors said that they could not or would not follow the law. The record, then, belies Plaintiffs' claim that 13 jurors "swore" that they could not follow a preponderance standard. With the additional context provided by the Court's clarification, no juror continued to state that he or she could not follow the legally required preponderance of the evidence standard. Indeed, Plaintiffs' position now is the exact opposite of the one they took at trial when they opposed Defendants' motion to strike Juror 5 for cause.

Plaintiffs also argue that they should have been permitted to ask follow-up questions. The Court, in fact, conducted follow-up questioning regarding the burden of proof. The Court handled the follow-up questioning itself, in no small part because Plaintiffs' counsel had demonstrated an unwillingness to follow the Court's instructions. After the Court clarified how the jury would be instructed and that the jury would be required to follow the Court's instructions on the burden of proof, no jurors indicated that they would be unable or unwilling to follow the law as the Court explained it. More specifically, Juror 25 did not indicate that he would be unable or unwilling to follow the law as the Court explained it. The Court is satisfied that its clarification, follow-up questions, and eventual rulings on strikes for cause ensured that no juror who was in fact unable or unwilling to follow the law was seated on the jury.

---

[5] For a caveat with respect to Juror 31, see note 1, *supra*.

## II. Testimony of Jacqueline Patterson

A long running dispute throughout this case pertained to the testimony of Jacqueline Patterson, a former Memorial Hermann human resources employee. Plaintiffs' counsel communicated with Patterson about conversations Patterson had, while still a Memorial Hermann employee, with Memorial Hermann attorneys regarding Memorial Hermann's defense against Plaintiffs' allegations. Plaintiffs then offered Patterson's testimony in their opposition to Defendants' motion for summary judgment. Alleging that this conduct by Plaintiffs' counsel was highly inappropriate and unethical, Defendants moved to disqualify Plaintiffs' counsel. Plaintiffs then moved to disqualify Defense counsel. In its order on summary judgment, the Court denied the cross motions to disqualify counsel and identified line-by-line which portions of Patterson's deposition testimony revealed Memorial Hermann's privileged information.

At trial, the Court resolved this contentious privilege dispute with certain evidentiary orders—orders designed to allow Plaintiffs to introduce Patterson's proper testimony while preventing Plaintiffs from invading Defendants' attorney–client privilege and work-product privilege. The Court allowed Patterson to testify regarding actions she took and conversations she had that were independent of her participation in Memorial Hermann's defense. The Court disallowed testimony regarding her conversations with Memorial Hermann lawyers preparing Memorial Hermann's defense and testimony regarding actions she took at the direction of Memorial Hermann's lawyers in connection with its defense. Defendants repeatedly re-urged their objections to Patterson's testimony and re-urged their motion to disqualify Plaintiffs' counsel, contending that Plaintiffs' trial strategy was based on information Plaintiffs gleaned by intentionally invading Memorial Hermann's privilege. The Court nonetheless allowed Patterson to testify under the parameters described above and refused to disqualify Plaintiffs' counsel.

Plaintiffs object to the limitations placed on Patterson's testimony. In particular, Plaintiffs claim that Patterson should have been able to testify that "after Plaintiffs filed EEOC Charges, Ms. Patterson searched for adverse performance evaluations for Plaintiffs . . . and found none."[6] Defendants respond that such testimony would have invaded privilege because the search at-issue "was completed by Ms. Patterson at the specific request of both Memorial Hermann's in-house and outside counsel, in connection with pending legal proceedings (Plaintiffs' EEOC Charges)."[7]

The Court rejects Plaintiffs' objection. The Court's ruling on this protracted privilege dispute—including with respect to Patterson's potential "search" testimony—ensured that Patterson could provide proper testimony while protecting Defendants' attorney–client and work-product privileges.

### III.  Testimony of Lisa Haneberg

Plaintiffs allege that the Court unfairly permitted Defendants' witness Lisa Haneberg to testify when she had not been disclosed in discovery while excluding Plaintiffs' fact witnesses that had not been disclosed. Defendants respond that "the testimony provided by Ms. Haneberg was expressly allowed by Order of the Court under circumstances different than those relating to Plaintiffs' proffered witnesses."[8] The Court's pretrial order limited Haneberg's testimony as follows: "Defendants may offer the testimony of Haneberg in order to contradict unanticipated testimony offered by Patterson at trial or for impeachment. Defendants may *not* offer Haneberg's testimony in order to contradict evidence in Plaintiffs' case in chief that Defendants anticipated or should have anticipated" (emphasis in original) [Doc. No. 160]. The Court allowed Haneberg to testify accordingly. Permitting Defendants to call a witness for impeachment purposes who had

---

[6] Plaintiffs' Motion for New Trial, Doc. No. 181 at 7.
[7] Defendants' Response, Doc. No. 183 at 13.
[8] Defendants' Response, Doc. No. 183 at 14.

not been disclosed in discovery was proper. *Duke v. Performance Food Grp., Inc.*, 594 F. App'x 829, 831–32 (5th Cir. 2014).

### IV. Questioning of Helen "Chips" Adams

Plaintiffs contend that the Court should have allowed them to question Defendant Helen "Chips" Adams regarding her allegedly wrongful treatment of employees other than the three Plaintiffs. Defendants maintain that such questioning would have led to improper minitrials, confusion of the issues, and unfair prejudice. Defendants further assert that Plaintiffs were improperly attempting to circumvent the Court's order excluding these other employees as witnesses by questioning Defendant Adams about the other employees and then calling them as "rebuttal" witnesses.

The Court agrees with Defendants. The Court excluded testimony pertaining to these other employees because such evidence would have led to unnecessary minitrials over the different circumstances leading to the other employees' complaints. The minimal (if any) probative value of questioning Defendant Adams about such other employees with whom she interacted under different circumstances was substantially outweighed by a likelihood of unfair prejudice, confusion of the issues, and undue delay. *See* Fed. R. Evid. 403. The Court's ruling was accordingly proper.

### V. Jury Instructions

Plaintiffs object to several parts of the Court's jury instructions.

### A. Scope of Title VII

The Court instructed the jury: "Terminating an employee because she is *or has been pregnant* . . . is prohibited by law" (emphasis added). Despite this instruction, Plaintiffs claim that the jury instructions failed to apprise the jury that Title VII protections apply to the period following pregnancy (e.g., maternity leave) as well as pregnancy itself. In light of the instruction just quoted, the Court finds no merit in Plaintiffs' argument. There is no reason to believe that the jury ignored the Court's instruction or was under a contrary impression.

### B. Title VII Causation Standard

The Court instructed the jury to use a "but for" causation standard for Plaintiffs' Title VII claims. The Court gave this but-for instruction after reviewing the Fifth Circuit Pattern Jury Instructions, which allow for either a but-for causation standard or a "mixed motive" causation standard, and considering the facts of the case. *See* Fifth Circuit Pattern Jury Instructions (Civil Cases) 11.1 (2014).

The Court concluded that the facts of this case comported with a but-for standard rather than a mixed-motive standard. The Fifth Circuit has explained: "if the district court has before it substantial evidence supporting a conclusion that both a legitimate and an illegitimate (i.e., more than one) motive may have played a role in the challenged employment action, the court *may* give a mixed-motive instruction." *Smith v. Xerox Corp.*, 602 F.3d 320, 333 (5th Cir. 2010), *abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013) (emphasis added). In this case, the Court did not have before it substantial evidence supporting a conclusion that both a legitimate and an illegitimate (i.e., more than one) motive may have played a role in the challenged employment action. Plaintiffs claimed that they were terminated because they had

9

recently been pregnant. Defendants claimed that Plaintiffs were terminated because the clinic at which they worked closed and they did not find employment elsewhere within the Memorial Hermann system. Defendants acknowledged that some, but not all, of the non-pregnant employees in the closing clinic found employment elsewhere within Memorial Hermann, but attributed this outcome to permissible factors, such as those employees' better work records. Thus, Plaintiffs were terminated either because they had been pregnant or because their clinic closed and they did not secure employment elsewhere. Under the facts of this case, the jury was properly asked to determine whether Plaintiffs would not have been terminated but for their pregnancies. The Court accordingly rejects Plaintiffs' argument that a mixed-motive standard should have been used.

### C. FMLA Retaliation Causation Standard

In accordance with the Fifth Circuit Pattern Jury Instructions, the Court also instructed the jury to use a "but for" causation standard for Plaintiffs' FMLA retaliation claims. *See* Fifth Circuit Pattern Jury Instructions (Civil Cases) 11.21 (2014). The Pattern Jury Instructions use a but-for standard for FMLA retaliation, while placing a possible mixed-motive instruction in a footnote. *Id.*

The Pattern Jury Instructions note some uncertainty around whether a mixed-motive standard remains permissible at all: "It is unclear whether, in the Fifth Circuit, an FMLA retaliation claim requires but-for causation or whether the motivating-factor standard may be used." *Id.* (citing *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389–90 (5th Cir. 2013)). *Ion* questioned (but did not decide) whether the mixed-motive standard remains available for FMLA retaliation cases in the wake of a pair of Supreme Court decisions addressing different types of claims. 731 F.3d at 389–90 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013) and *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)). Yet even before those Supreme Court cases, the Fifth Circuit's approval

of the mixed-motive standard was not stated in exclusive terms: "consistency requires that we endorse the mixed-motive framework in *appropriate* FMLA retaliation cases." *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 334 (5th Cir. 2005) (emphasis added). The Court is aware of certain dicta in an unpublished Fifth Circuit case stating: "At present, FMLA retaliation claims are analyzed solely by determining whether the discrimination was *a motivating factor* in the adverse employment decision." *Garcia v. Penske Logistics, L.L.C.*, 631 F. App'x 204, 210 (5th Cir. 2015) (emphasis in the original). The Court, however, does not assign decisive weight to the *Garcia* dicta in light of the Pattern Jury Instructions' contrary content and the Fifth Circuit's non-exclusive language in *Richardson*.

Even if a motivating factor standard remains permissible in some FMLA retaliation cases, a but-for standard was appropriate in this case. Plaintiffs were terminated either in retaliation for taking FMLA leave (as Plaintiffs claimed) or because their clinic closed and they failed to find employment elsewhere within the Memorial Hermann system (as Defendants claimed). The Court finds unpersuasive Plaintiffs' contention that a motivating-factor standard should have been used. The but-for standard was the appropriate one for this case.

## VI. Conclusion

Plaintiffs' Motion for New Trial [Doc. No. 181] is DENIED.[9]

Signed at Houston, Texas, on this the 29th day of August, 2019.

```
                              ANDREW S. HANEN
                              UNITED STATES DISTRICT JUDGE
```

---

[9] Plaintiffs also claim that the jury's verdict was against the great weight of the evidence. The Court rejects this claim and finds the jury's findings to be supported by ample evidence.